UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THEOPHILE LaFARGUE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JO ANNE B. BARNHART, Commissioner ) <br> of Social Security Administration, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. C05-0664-RSL-JPD <br><br> REPORT AND RECOMMENDATION |

Plaintiff Theophile LaFargue proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Commissioner partially granted and partially denied plaintiff's application for Disability Insurance Benefits ("DI") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act after a hearing before an Administrative Law Judge ("ALJ"), finding that the plaintiff met the disability requirements for a closed period from March 25, 2001, through March 31, 2002, but did not meet the disability requirements for the time periods prior to March 25, 2001, or after March 31, 2002. For the reasons set forth below, it is recommended that the final decision of the Commissioner be affirmed and the appeal be dismissed.

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiff is a 50-year-old male with fourteen years of education.  (AR 67, 612).  Plaintiff previously worked as a home attendant, nurse's assistant, program director of family home, cashier and checker, waiter, dietary aid, quality control inspector, bartender, deli worker, florist sales assistant, set designer, and trade show representative.  (AR 660-62).

Plaintiff filed an application for DI and SSI benefits on August 14, 2001, alleging a disability onset date of January 1, 1998, due to myocardial infarction, high blood pressure, depression, panic attacks, and plantar fasciatus.  (AR  67-70).  Plaintiff's application was denied initially and on reconsideration, and he timely requested a hearing.  (AR  35-40, 41).

The ALJ conducted a hearing on October 20, 2003, and heard testimony from plaintiff, vocational expert Stephen Van Houten, and lay witness Joyce Pollock.  (AR  604-69).  On June 7, 2004, the ALJ issued a partially favorable decision, finding plaintiff disabled under the Social Security Act for the closed period from March 25, 2001 through March 31, 2002.  The ALJ found plaintiff not disabled for the time periods prior to March 25, 2001, and after March 31, 2002.

Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review plaintiff's claim.  (AR 7-10).  Plaintiff appealed this final decision of the Commissioner to this Court.  Plaintiff challenges only that portion of the ALJ's decision finding him not disabled for the time period after March 31, 2002.  (Dkt. No. 14 at 2).

## II.  JURISDICTION

This Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## III.  STANDARD OF REVIEW

The district court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  See 42 U.S.C. § 405(g); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th

01  Cir. 1996). Substantial evidence is defined as more than a mere scintilla but less than a

02  preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

03  support a conclusion. *Smolen,* 80 F.3d at 1279. The ALJ is responsible for determining

04  credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v.*

05  *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than

06  one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*

07  *v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Smolen*, 80 F.3d at 1292).

08        The Court has discretion to remand for further proceedings or to award benefits. *See*

09  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of

10  benefits where "the record has been fully developed and further administrative proceedings

11  would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir.

12  2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

17  *Id*. at 1076-77.

18  IV.  EVALUATING DISABILITY

19        As the claimant, Mr. LaFargue bears the burden of proving that he is disabled within

20  the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.

21  1999). Disability is defined as the "inability to engage in any substantial gainful activity by

22  reason of any medically determinable physical or mental impairment, which can be expected to

23  result in death, or which has lasted or can be expected to last for a continuous period of not

24  less than twelve months[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled only if his

25  impairments are of such severity that he is not only unable to do his previous work, but

26  cannot, considering his age, education, and work experience, engage in any other substantial

REPORT AND RECOMMENDATION
PAGE -3

gainful activity existing in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The Social Security regulations set out a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must establish that he is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant does so, then at step two, the claimant must establish that he has one or more medically severe impairments or combination of impairments that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant who meets one of the listings for the required twelve-month duration requirements is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether the claimant can still perform that work. *Id.* If the claimant is not able to perform his past relevant work, then the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1099-100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.  DECISION BELOW

On June 7, 2004, the ALJ issued her decision, finding:

* * *

3. For the period beginning January 1, 2000, the claimant has not engaged in substantial gainful activity.

4. The claimant has no medically determinable impairment during the period from January 1, 2000 through March 24, 2001.

5. The claimant's coronary artery disease status post myocardial infarction on March 25, 2001, left-sided weakness, plantar fasciatus, anxiety disorder, major depressive disorder and a panic disorder are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b) since March 25, 2001.

6. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  The claimant's mental impairments result in mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace and he has had no episodes of decompensation of extended duration.  There is no evidence to establish the presence of the "C" criteria.

7. For the period from January 1, 2000 through March 24, 2001 and for the period since April 1, 2002 the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

8. For the period from March 25, 2001 through March 31, 2002 the claimant was unable to perform even sedentary work on a full time basis as he had increased anxiety due to his myocardial infarction.  The claimant had a substantial loss of ability to meet the demands of basic work related activities on a sustained basis, the unskilled sedentary occupational base is significantly eroded and a finding of disability is justified under Social Security Ruling 96-9p.  The claimant is therefore found disabled within the framework of the medical vocational guidelines in accord with SSR 96-8p and 96-9p.

9. For the period beginning April 1, 2002, the claimant experienced medical improvement related to his ability to perform substantial gainful activity.  The claimant regained the residual functional capacity to perform [work] which does not require lifting and carrying more than 20 pounds occasionally and ten pounds frequently, sitting for more than six hours in an eight hour day and standing and/or walking for more than six hours in an eight-hour day.  Additionally, the claimant needs to alternate sitting and standing every 30 minutes and he is limited to occasional climbing, crawling and balancing.  Due to the claimant's mental impairments, the

claimant is able to perform simple, routine and repetitive one and two step tasks and he is limited to occasional public contact.

10. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

* * *

14. For the period beginning April 1, 2002 the claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

15. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.14 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform as of April 1, 2002 related to his medical improvement. Examples of such jobs include work as assembler (DOT #706.684-022) and lens-block gauger (DOT #716.687-030).

16. The claimant has been under a disability as defined in the Social Security Act from March 25, 2001 through March 31, 2002 but not from that date [ ] through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(AR 31-32).

## VI.  ISSUES ON APPEAL

A. Did the ALJ err by rejecting or by failing to give proper weight to the opinion of plaintiff's treating psychologist Aaron Daniels, Ph.D.?

B. Did the ALJ err by rejecting or failing to give proper weight to the opinion of plaintiff's lay witness, Joyce Pollock?

C. Did the ALJ err by finding that the plaintiff had the residual functional capacity to perform simple, routine and repetitive one- and two-step tasks, limited to occasional public contact?

## VII.  DISCUSSION

A. <u>The ALJ did not erroneously evaluate evidence from Dr. Daniels.</u>

Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than

REPORT AND RECOMMENDATION
PAGE -6

01 the opinions of other physicians. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). A
02 treating physician's opinion, however, is not necessarily conclusive as to either a physical
03 condition or the ultimate issue of disability. *Id.* at 761-62 n.7. The ALJ may disregard the
04 treating physician's opinion whether or not that opinion is contradicted. *Magallanes v.*
05 *Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).

06 Where a treating physician's opinion is not contradicted by another physician, it may
07 be rejected only for "clear and convincing" reasons supported by substantial evidence in the
08 record. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ must defer to a
09 treating physician's opinion, even if controverted by other medical opinions, unless the ALJ
10 provides specific and legitimate reasons based on substantial evidence in the record.
11 *Magallanes*, 881 F.2d at 751; *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "The
12 ALJ can meet this burden by setting out a detailed and thorough summary of the facts and
13 conflicting clinical evidence, stating his interpretation thereof and making findings."
14 *Magallanes,* 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.
15 1986)). An ALJ may, however, reject medical opinions based upon check-the-box type
16 reports that lack a narrative explanation for their conclusions. *Crane v. Shalala*, 76 F.3d 251,
17 253 (9th Cir. 1996). The Court's main concern in connection with this inquiry centers
18 around the search for specific justifications and rationale for a conclusion, as opposed to
19 conclusory statements or a mere reiteration of a claimant's subjective complaints. *Id.* Courts
20 are not obligated to accept any treating physician's opinion that is brief and conclusory in
21 form and that offers few clinical findings to support its conclusions. *Magallanes*, 881 F.2d at
22 751.

23 In this case, plaintiff relies heavily on an October 2003 assessment from Dr. Daniels, a
24 psychologist at Seattle Mental Health, who, when filling out a Mental Residual Functional
25 Capacity Assessment form, checked boxes indicating that plaintiff's mental impairments
26 severely limited his ability to work. (AR 585-88). Dr. Daniels opined that plaintiff was

REPORT AND RECOMMENDATION
PAGE -7

severely limited in his ability to maintain attention and concentration, to work in coordination with or proximity to others without being distracted, to complete a normal workday and work week without interruptions from psychologically-based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, and to respond appropriately to changes in the work setting. (AR 585-88). In contrast to other reports relied on by the ALJ, this report was simply a five-page form that contained no explanation for the proffered findings.

The ALJ considered Dr. Daniel's assessments. For example, she accepted Dr. Daniels' treatment notes (AR 571-83) to support her finding that plaintiff's mental health had improved and was controlled with medication, noting that on September 23, 2003, plaintiff was "relaxed and felt decreased paranoia and irritability (Exhibit 9F/10)." (AR 25). However, the ALJ discounted Dr. Daniels' October 2003 assessment by noting that the October 2003 assessment was a check-the-box form, was unsupported by evidence or analysis, and was formulated in an effort to support plaintiff's appeal. (AR 25). Although the record includes treatment notes from Dr. Daniels, his notes are scant, short-hand notations, and do not support the conclusions as to plaintiff's level of impairment contained in the October 2003 assessment. (AR 328-34, 571-83). Furthermore, Dr. Daniels' assessment is inconsistent with other substantial medical evidence in the record indicating that plaintiff's depressive disorder and anxiety disorder created no more than moderate employment limitations. (AR 291-314, 382, 403, 480, 485, 503). For example, the neuropsychological assessment completed by plaintiff's treating psychologist Dawn Ehde, Ph.D., indicated that plaintiff had a relatively high functioning Global Assessment Functioning ("GAF")[1] score of 65. (AR 372). Dr. Ehde's assessment is also consistent with psychiatric evaluations from

---

[1] The Global Assessment of Functioning, or GAF scale, is a numeric scale (1 through 100) used by mental health clinicians and doctors to rate the social, occupational, and psychological functioning of adults. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders DSM-IV-TR (Fourth Ed.).

REPORT AND RECOMMENDATION
PAGE -8

01 examining psychiatrist David Jarvis, M.D., and reviewing psychologist Gerald Peterson,
02 Ph.D., finding that plaintiff is able to work.  (AR 291-314).
03       Because Dr. Daniels' assessment was offered on a check-the-box form, was
04 unsupported by objective findings, and was inconsistent with other medical evidence, the ALJ
05 did not err by failing to credit fully Dr. Daniels' assessment of plaintiff's condition.

06
07       B.     <u>The ALJ did not erroneously reject or weigh evidence from Joyce Pollock</u>.

08       In order to determine whether a claimant has an impairment, an ALJ may also
09 consider lay-witness sources, such as testimony by friends.  20 C.F.R. § 404.1513(d)(4).
10 Lay-witness testimony as to a claimant's symptoms or how an impairment affects ability to
11 work is competent evidence, 20 C.F.R. § 404.1513(e), *Sprague v. Bowen,* 812 F.2d 1226,
12 1232 (9th Cir.1987), and therefore *cannot* be disregarded without comment.  *Dodrill v.*
13 *Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  If an ALJ wishes to discount the testimony of
14 a lay witness, she must provide reasons germane to each witness and may not simply
15 categorically discredit the testimony.  *Id.*  Identifying inconsistencies between such statements
16 and the record when viewed as a whole is sufficient.  *Lewis v. Apfel*, 236 F.3d 503, 510-12
17 (9th Cir. 2001).
18       Plaintiff asserts that the ALJ erred in failing to give significant weight to the testimony
19 of his friend, Joyce Pollock, who testified regarding plaintiff's impairments and limitations.
20 (Dkt. No. 14 at 9; AR 649-58).  Ms. Pollock testified that she had known plaintiff a few
21 months, and that he lived in her "mother-in-law" apartment at her house.  (AR 650).  She also
22 testified that plaintiff was depressed, paranoid, had poor concentration, and often did not
23 finish what he started.  (AR 651, 655).
24       In this case, the ALJ stated that she gave the testimony of Ms. Pollock only limited
25 weight because it conflicted with the medical records.  (AR 28).  She also noted that it would
26 be in the "best financial interest of [Ms. Pollock] to corroborate the claimant's statements."

REPORT AND RECOMMENDATION
PAGE -9

(AR 28). Finally, the ALJ also noted that Ms. Pollock did not have the expertise to assess plaintiff's emotional function. These reasons for discounting Ms. Pollock's testimony are specific and germane. The ALJ did not err with respect to the weight to be given to the testimony of the plaintiff's friend.

    C.    <u>Substantial evidence exists in the record supporting the finding that the plaintiff had the residual functional capacity to perform light work</u>.

Plaintiff also argues that the ALJ erred in assessing his residual functional capacity ("RFC"). (Dkt. No. 14 at 10-12). The ALJ assessed plaintiff's RFC as follows:

> [F]or the period April 1, 2002, the claimant regained the residual functional capacity to perform work which does not require lifting and carrying more than 20 pounds occasionally and ten pounds frequently, sitting for more than six hours in an eight-hour day and standing and/or walking for more than six hours in an eight-hour day. Additionally, the claimant needs to alternate sitting and standing every 30 minutes and he is limited to occasionally climbing, crawling and balancing.
>
> The claimant's capacity for the full range of work is reduced by additional limitations related to his mental impairments in that he has mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace and he has had no episodes of decompensation of extended duration. Based on these limitations, the claimant is able to perform simple, routine and repetitive one and two step tasks and he is limited to occasional public contact.

(AR 28). Plaintiff argues that the mental RFC assessment is not supported by substantial evidence. Plaintiff's arguments rely in significant part on the opinions of Dr. Daniels. As noted above, however, the ALJ offered appropriate reasons for discounting Dr. Daniels' opinions in assessing plaintiff's mental RFC. Having discounted Dr. Daniels' assessment, the ALJ found that plaintiff retained the capacity to perform simple, routine and repetitive one- and two-step tasks, limited to occasional public contact. This finding is supported by substantial evidence.

In August 2001, plaintiff was first treated for panic disorder, generalized anxiety, and depression at Harborview Medical Center after suffering a heart attack on March 25, 2001. (AR 208-13). In September 2001, plaintiff's treating psychiatrist, Dr. Murray Bennett,

01 reported that plaintiff "finds his anxiety has decreased significantly . . . [and] he is finding

02 himself socializing more and more. The significance and severity of his panic attacks has

03 decreased dramatically and frequency as well." (AR 213). By December 2001, Dr. Murray

04 reported that plaintiff had not had a panic attack for six weeks. (AR 167).

05    In January 2002, plaintiff underwent a neuropsychological evaluation for the

06 Harborview Comprehensive Outpatient Rehabilitation Program. Psychologist Dr. Ehde

07 reported:

> [plaintiff had] good cognitive abilities with some difficulties on measures sensitive to brain dysfunction. Both verbal and non-verbal intellectual functioning were in the average range . . . His primary strengths lie in his verbal skills . . . low-average performance on fine motor speed, cognitive flexibility, and memory for visual information. His greatest difficulty was on a measure requiring complex and novel problem solving and the capacity to learn from experience.

12 (AR 371-72). Dr. Ehde diagnosed plaintiff with generalized anxiety disorder, major

13 depressive disorder, and a personality disorder, but assigned plaintiff a high GAF score of 65.

14 (AR 372).

15    In February 2002, plaintiff underwent a psychiatric evaluation by examining

16 psychiatrist Dr. Jarvis. Dr. Jarvis reported:

> [Plaintiff] appears to be doing a good job dealing with his panic disorder and agoraphobia, utilizing medication, relaxation and desensitization techniques. He is aware of his irritability and overtalkativeness, and having more trouble dealing with that. He is doing things to improve his socialization. He is interested in ongoing counseling. . . . Both his mental health and general health appear to be on the mend, and he is looking for work.

21 (AR 296). Dr. Jarvis opined that plaintiff's anxiety disorder, panic episodes, and agoraphobia

22 would create no more than moderate limitations with respect to employment. (AR 297).

23 Plaintiff's "more chronic disorder, probably Cyclothymic Disorder, with irritability,

24 overtalkativeness, and difficulty getting along with others, creates more severe limitations in

25 his ability to relate appropriately to others, and to respond appropriately to or tolerate the

26 pressures and expectations of a normal work setting." (AR 297). Dr. Jarvis' Mental Status

REPORT AND RECOMMENDATION
PAGE -11

Evaluation was entirely within normal limits, and he assessed plaintiff's GAF at 55, in the moderate range. (AR 296).

Reviewing psychologist Dr. Peterson opined that based on the medical evidence, plaintiff had no significant limitations in his understanding and memory. (AR 300). Dr. Peterson noted that although plaintiff had moderate difficulty with concentration and social functioning, this would not interfere with his ability to perform his responsibilities. (AR 300-01). Dr. Peterson concluded that plaintiff is able to work. (AR 314).

In assessing plaintiff's mental RFC, the ALJ specifically relied on the conclusions of Dr. Peterson, whose findings she found consistent with the medical records of Dr. Bennett, Dr. Ehde, and Dr. Jarvis. Accordingly, substantial evidence (defined as more than a "mere scintilla but less than a preponderance," *Smolen*, 80 F.3d at 1279) exists to support the ALJ's finding that plaintiff had the residual capacity to perform simple, routine, repetitive one- and two-step tasks with limited public contact. Although the evidence on this issue may be subject to different interpretations, "[i]n cases where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld." *Thomas*, 278 F.3d at 954.

## VIII. CONCLUSION

Accordingly, I recommend that the final decision of the Commissioner be affirmed and that the appeal be dismissed. A proposed Order accompanies this Report and Recommendation.

DATED this 2nd day of February, 2006.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge